Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, September 28, 2015 4:18:59 PM

# IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| 201 NORTH GEORGE ST., LLC, | ) | Case No. 14-bk-294 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| ─────────────────────────── | ) | |
| | ) | |
| MOORING CAPITAL FUND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 14-ap-16 |
| | ) | |
| NEIL J. SULLIVAN, II, | ) | |
| JUDY S. SULLIVAN, and | ) | |
| JENNIFER S. MAGHAN, in her capacity | ) | |
| as the Clerk Of the County Commission | ) | |
| of Jefferson County, West Virginia, | ) | |
| | ) | |
| Defendants. | ) | |
| ─────────────────────────── | ) | |

## MEMORANDUM OPINION

Mooring Capital Fund, LLC ("Mooring"), seeks summary judgment on its complaint to reverse the priority of liens on property owned by 201 North George St. LLC (the "Debtor"), and restore its lien to first position. Neil and Judy Sullivan oppose Mooring's motion in that regard and seek summary judgment declaring that they possess a lien on the Debtor's property that is superior to Mooring's lien.

For the reasons stated herein, the court will deny the parties' respective motions for summary judgment.

1

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of proof to establish that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden.  *Id.* at 323.  Material facts are those necessary to establish the elements of the cause of action.  *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant."  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.  *Celotex Corp.*, 477 U.S. at 322-23.  The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Shaw,* 13 F.3d at 798.  However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial."  *Anderson*, 477 U.S. at 249-50.  Nor should the court make credibility determinations.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial.  *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II.  BACKGROUND

In April 2005, Middleburg Bank, Mooring's predecessor-in-interest, loaned $2,000,000 (the "2005 Loan") to the Debtor, and secured the Debtor's repayment of the loan by virtue of a Construction Deed of Trust (the "2005 Deed of Trust") on the Debtor's property located at 201

N. George St., Charles Town, WV (the "Property").[1] On May 3, 2005, Middleburg recorded the 2005 Deed of Trust in the office of the Clerk of the County Commission of Jefferson County, West Virginia (the "Clerk"). At that time, Middleburg's lien was first in priority. The 2005 Deed of Trust provided, among other things, that the Debtor could only encumber the Property to secure subordinate financing with Middleburg's permission.

Despite the limiting condition imposed upon the Debtor for obtaining subordinate financing secured by the Property, it borrowed $450,000 from the Sullivans in May 2006, and the Sullivans secured the Debtor's promise to repay the loan by recording a second lien (the "2006 Deed of Trust") against the Property on May 5, 2006. When the Sullivans presented the 2006 Deed of Trust to the Clerk for recording, the Clerk recorded it but mis-indexed it under the name "North George Street" instead of the Debtor's name, 201 North George St., LLC. Although the Sullivans' lien was the only one indexed under "North George Street," they knew that they possessed a second-priority lien on the Property.

In April 2008, Middleburg refinanced the 2005 Loan with a new loan for $2,150,000 (the "2008 Loan").[2] Middleburg secured the Debtor's promise to repay the 2008 Loan by virtue of an April 4, 2008 Deed of Trust (the "2008 Deed of Trust"), which Middleburg recorded on April 16, 2008. In conjunction therewith, Middleburg released its 2005 Deed of Trust against the Property after it conducted a title search that did not reveal any other liens on the Property. Notably, the 2006 Deed of Trust remained mis-indexed when Middleburg recorded its 2008 Deed of Trust and released its 2005 Deed of Trust. In fact, the 2006 Deed of Trust was not properly indexed until March 18, 2014.

### III. DISCUSSION

Mooring asserts that it is entitled to summary judgment because West Virginia law recognizes a court's equitable power to restore a lienor's security interest to its original priority if the lienor released its lien by accident or mistake and in ignorance of an intervening lien. To

---

[1] Mooring's cause of action is based upon its position vis-à-vis Middleburg. As the assignee of Middleburg's interest in the underlying notes and deeds of trust, Mooring may pursue any remedies related thereto as if it were the original party to those transactions. *See Cook v. Eastern Gas & Fuel Assocs.*, 39 S.E.2d 321, 326 (W. Va. 1946) ("The assignee steps into the shoes of the assignor and takes the assignment subject to all prior equities between previous parties.").

[2] The 2005 Loan was used as a bridge to finance construction. The Debtor and Middleburg intended to convert the loan to a permanent one following the completion of the relevant work.

3

support its position in that regard, Mooring relies upon *Conservative Life Ins. Co. v. Nat'l Exchange Bank of Wheeling*, 171 S.E. 530 (W. Va. 1933). Specifically, Mooring contends that the Supreme Court of Appeals of West Virginia (the "WV Supreme Court") recognized in *Conservative Life* the principle that

> Where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence.

*Conservative Life Ins. Co.*, 171 S.E. at 531. Notably, Mooring asserts alternative means by which, in its mind, the court can reach an equitable result. Specifically, it notes that although its original request was to have the court exercise its equitable powers to cancel its release of the 2005 Deed of Trust, the same equitable relief may be fashioned by granting first priority to the 2008 Deed of Trust but only to the extent of the amount due and owing on the 2005 Loan.

The Sullivans contend that the court should grant them summary judgment and dismiss Mooring's complaint because equitable relief is unavailable to Mooring given the facts underlying this proceeding; namely, that Middleburg's 2008 Loan was for an amount greater than the 2005 Loan such that it paid off the 2005 Loan, and that Middleburg had constructive notice, if not actual knowledge, of the Sullivans' 2006 Deed of Trust at the time it released its 2005 Deed of Trust. In support of their position, they assert that *Atkinson v. Plum*, 40 S.E. 587 (W. Va. 1901), not *Conservative Life*, controls the outcome here. In that regard, the Sullivans assert that the WV Supreme Court in *Atkinson* expressly rejected the use of equitable subrogation where the mortgagee pays off its own debt, which they assert is the relief Mooring seeks by this proceeding.

Generally, in West Virginia, a deed of trust duly admitted to record in the county where the property subject to the deed of trust is located provides constructive notice thereof to subsequent creditors and purchasers. *See* W. Va. Code §§ 40-1-8 and 40-1-9. When a lienor releases its lien, "such lien shall be discharged and extinguished . . . as if such lien had never existed." W. Va. Code § 38-12-8. Notably, however, the West Virginia Supreme Court has held that "the cancellation of a mortgage on the record is but *prima facie* evidence of its discharge; and that, if the owner prove the cancellation to be induced through fraud, accident, or mistake, his rights under the mortgage will not be affected thereby." *Conservative Life Ins. Co.*, 171 S.E.

4

at 531. In that regard, "[w]hen a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original priority as a lien." *Atkinson*, 40 S.E. at 589 (citation omitted); *Conservative Life Ins. Co.*, 171 S.E. at 531 ("[I]f the plaintiff accepted the second deed of trust and released the first in ignorance of [an intervening interest], and the rights of innocent third parties have not been affected thereby, it is entitled . . . to have its senior lien restored.").[3]

Here, neither party is entitled to summary judgment because there is a genuine dispute as to whether Middleburg knew about the Sullivans' 2006 Deed of Trust at the time it released its 2005 Deed of Trust and recorded its 2008 Deed of Trust; a fact that is material given the law applicable to this dispute.

In that regard, Mooring asserts that Middleburg did not know about the Sullivans' 2006 Deed of Trust based upon the following: Middleburg and the Debtor intended that the 2005 Loan would be converted into permanent financing upon the completion of the construction on the Property, which occurred in 2008; the Debtor was prohibited by the 2005 Deed of Trust from further encumbering the Property without Middleburg's written permission, which Middleburg did not give; the Clerk mis-indexed the 2006 Deed of Trust such that a search for liens on the Property in 2008 did not reveal the Sullivans' 2006 Deed of Trust; and in the 2008 Business Loan Agreement, which Middleburg and the Debtor executed in conjunction with the 2008 Loan, the Debtor again represented that it had not granted any security interest in, among other things, the Property.

The Sullivans, contend that the deposition testimony of James Campbell, Steven Foster, and Michael Briel establish Middleburg's knowledge of the 2006 Deed of Trust.[4] Specifically,

---

[3] Despite the Sullivans' attempt to distinguish the two, *Atkinson* and *Conservative Life* stand for the same legal principle. Although the West Virginia Supreme Court noted in *Atkinson* that equitable subrogation did not apply in a case "where the creditor himself pays off his own lien by furnishing money and taking a second security . . . ," *Atkinson*, 40 S.E. at 588, it went on to also recognize the court's equitable power to restore a creditor's lien priority when the creditor released its original lien and took a subsequent lien in ignorance of an intervening lien. *Id.* at 588-89 ("[C]ourts of equity would look at the substance, and would not hold the second loan, merely as such, though secured by a second deed of trust, to be a release of the first deed of trust per se, unless there is something more to show the intention . . . .").

[4] To the extent the Sullivans assert that Middleburg's constructive notice of their 2006 Deed of Trust is sufficient to preclude relief to Mooring here, the court is unpersuaded based upon the

5

Mr. Campbell, a former member of the Debtor, testified that at some point before 2008 he spoke to Bill Byers, a representative of Middleburg, regarding the Sullivans' 2006 Deed of Trust and provided to Mr. Byers a copy of the recorded 2006 Deed of Trust. Mr. Foster testified that during a more recent conversation with Mr. Byers, Mr. Byers acknowledged that Middleburg knew of the Sullivans' 2006 Deed of Trust at the time it released its 2005 Deed of Trust. And Mr. Briel, a member and a manager of the Debtor, testified that in 2008 he gave Mr. Byers a copy of the Debtor's 2007 tax return, which indicated that the Property secured financing to the extent of $2,400,000.

In response, however, Mooring contends that that evidence does not prove Middleburg knew about the 2006 Deed of Trust before releasing the 2005 Deed of Trust. Specifically, Mooring asserts that Mr. Campbell's recollection regarding his conversation with Mr. Byers is imprecise, and he cannot recall precisely when he allegedly gave Mr. Byers a copy of the recorded 2006 Deed of Trust. Regarding Mr. Foster's testimony, Mooring asserts that his representation of what Mr. Byers told him is inadmissible hearsay and must be ignored by the court. And to the extent that the Sullivans rely on Mr. Briel's testimony regarding the Debtor's tax return for the tax year 2007, Mooring asserts that the tax return does not sufficiently indicate that the Sullivans' 2006 Note was secured by an interest in the Debtor's Property.

## IV. CONCLUSION

Based on the foregoing, the court finds that a genuine dispute exists in the record at this stage as to whether Middleburg knew about the 2006 Deed of Trust before it released its 2005 Deed of Trust—a material fact in this proceeding. Consistent with Fed. R. Bankr. P. 7058, the court will enter a separate order denying Mooring's and the Sullivans' respective motions for summary judgment.

---

analyses of *Atkinson* and *Conservative Life*, which both turn on the creditor's knowledge or ignorance of an intervening lien. Similarly, to the extent that Mooring asserts that its knowledge of the Sullivans' 2006 Deed of Trust is immaterial to the court's adjudication of the issue before it, the court is unpersuaded. To support its contention in that regard, Mooring relies upon several cases from courts outside of West Virginia. The court, however, must apply the law as it exists in West Virginia, and *Atkinson* and *Conservative Life* both make clear that whether Mooring knew about the Sullivans' 2006 Deed of Trust is an important factor to be considered by the court.