Patrick M. Flatley
United States Bankruptcy Judge

Dated: Wednesday, April 20, 2016 11:51:50 AM

# IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| 201 NORTH GEORGE ST., LLC, | ) | Case No. 14-bk-294 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| _____ | ) | |
| | ) | |
| MOORING CAPITAL FUND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 14-ap-16 |
| | ) | |
| NEIL J. SULLIVAN, II, | ) | |
| JUDY S. SULLIVAN, and | ) | |
| JENNIFER S. MAGHAN, in her capacity | ) | |
| as the Clerk Of the County Commission | ) | |
| of Jefferson County, West Virginia, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

On November 20, 2015, the court granted leave to Mooring Capital Fund, LLC (the "Plaintiff"), to file its first amended complaint. Neil and Judy Sullivan now seek the dismissal of Counts III - VI of the first amended complaint based upon the Plaintiff's alleged failure to state a cause of action upon which relief can be granted. The Plaintiff contends that the court must deny the Sullivans' motion to dismiss because it pleaded plausible causes of action in Counts III – VI of the first amended complaint.

For the reasons stated herein, the court will grant the Sullivans' motion to dismiss, in part, and deny their motion to dismiss, in part.

1

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint should be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b) (incorporating Rule 12(b)(6)). To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). As the Fourth Circuit has explained, the plausibility standard requires a plaintiff "to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility' of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Finally, when courts evaluate a motion to dismiss, they are to (1) construe the complaint in a light favorable to the plaintiff, (2) take factual allegations as true, and (3) draw all reasonable inferences in favor of the plaintiff. 5C Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1357 (3d. ed. 2012) (collecting thousands of cases). The court's role in ruling on a motion to dismiss is not to weigh the evidence, but to analyze the legal feasibility of the complaint. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

## II.  BACKGROUND

On September 28, 2015, the court entered a memorandum opinion and order denying summary judgment to both the Plaintiff and the Sullivans. In its memorandum opinion, the court made factual findings relevant to this proceeding, which is essentially a dispute over lien priority. Despite the Plaintiff adding four causes of action by its first amended complaint, the court does not believe that the Plaintiff asserts any additional operative facts in its first amended complaint. The court will thus not restate its factual findings here.

## III. DISCUSSION

By Count III of its first amended complaint, the Plaintiff seeks a declaration that the Sullivans' $450,000 payment to the Debtor was a capital contribution rather than a loan. The Sullivans contend that the court must dismiss Count III for two reasons. First, because the Debtor's Amended and Restated Operating Agreement, which the Plaintiff referenced in its first amended complaint, and which the Sullivans attached to their motion to dismiss, expressly

2

refutes the Plaintiff's contention in Count III. Second, because the court previously found that the Debtor "borrowed $450,000 from the Sullivans in May 2006, and the Sullivans secured the Debtor's promise to repay the loan by recording a second lien . . . against the Property on May 25, 2006." The Plaintiff counters that it states a claim upon which relief can be granted despite what the Debtor's Amended and Restated Operating Agreement provides. It also asserts that the court's characterization of the payment in disposing of motions for summary judgment on the original complaint does not preclude them from bringing Count III because, among other reasons, Rule 8(d)(3) permits inconsistent claims.

Federal Rule of Bankruptcy Procedure 7012(d), incorporating Rule 12(d) provides that a court must either exclude matters outside the pleadings or treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment if such extraneous matters are presented. In order to convert a motion to dismiss to one for summary judgment all parties must have an opportunity to present all pertinent materials for such a motion. Rule 12(d). However, "under narrow circumstances, a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment." *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Generally, "courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated to the complaint." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (internal citations omitted). If a document is "integral to and explicitly relied on in the complaint" and there is no question as to the authenticity of that document, then a court may consider the document as it has effectively been incorporated to the complaint. *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). For instance, bankruptcy courts frequently take judicial notice of the record in related bankruptcy cases when adjudicating adversary proceedings. *In re Renegade Holdings, Inc.*, 457 B.R. 441, 443 (Bankr. M.D.N.C. 2011); *In re Ganier*, 403 B.R. 79, 82 (Bankr. D. Idaho); *Pittman v. Johnson*, No. 15-CV-00260, 2015 WL 7738392, *1 (W.D.N.C. Dec. 1, 2015) (citing *Goldfarb*, 791 F.3d at 509 for the notion that judicial notice of filings in the debtor's bankruptcy proceedings is acceptable). Federal courts have also taken judicial notice of corporation's articles of incorporation since they are certified public records kept by state officials. *Grassmueck v. Barnett*, 281 F.Supp.2d 1227, 1232 (W.D. Wash. 2003); *In re Greater Southeast Community Hospital Corp.*, 333 B.R. 506, 527 (Bankr. D.D.C. 2005). Nonetheless, "judicial

notice must not be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of the litigants to present evidence on disputed matters." *Goldfarb*, 791 F.3d at 511.

Here, the Sullivans ask the court to consider certain provisions of the Debtor's Amended and Restated Operating Agreement, which the Plaintiff incorporates by reference in its first amended complaint. The Plaintiff does not contest the court's consideration of the Amended and Restated Operating Agreement but asserts that the factual allegations pled in its first amended complaint are sufficient to survive the Sullivans' motion to dismiss. The court believes it can consider the Amended and Restated Operating Agreement, particularly in light of the parties' respective positions in that regard, but finds that the document is not dispositive at this stage of the proceeding.

The court's task here is to adjudge the sufficiency of the Plaintiff's first amended complaint, not to weigh evidence. It may be that the Sullivans' argument regarding the character of their payment to the Debtor ultimately prevails. But the Plaintiff alleges in its first amended complaint that the Sullivans engaged in a ruse regarding the characterization of their $450,000 payment to the Debtor. Their assertion in that regard implicates the veracity of the Amended and Restated Operating Agreement, at least insofar as the Sullivans are concerned, such that it is not dispositive here. Based upon the Plaintiff's contention that the Sullivans engaged in a scheme to manipulate the characterization of their payment to the Debtor depending on what was, from time to time, beneficial to them, the court will not dismiss the Plaintiff's alternate theory that the Sullivans' payment to the Debtor was truly a capital contribution and not a loan.

Moreover, to the extent that the Sullivans contend that the court's prior finding at summary judgment on the original complaint—that the $450,000 payment to the Debtor was a loan—precludes Count III, the court disagrees. Notably, the court's disposition of the competing motions for summary judgment was based upon there not being a dispute regarding the nature of the Sullivans' $450,000 payment to the Debtor. The court thus found that, in accordance with the parties' respective assertions, the payment was a loan. Now, however, the Plaintiff has amended its complaint, consistent with Rule 8(d)(3), to allege alternative and inconsistent relief. The amended complaint supersedes the Plaintiff's original complaint and now places the characterization of the Sullivans' payment to the Debtor in dispute, at least as to certain counts of the first amended complaint. Because the dispute implicated by Count III of the first amended

4

complaint was not properly before the court when it disposed of the motions for summary judgment on the original complaint, the court cannot now preclude the Plaintiff from bringing its amended claim based upon the court's earlier finding. *See Viera v. AGM, II, LLC (In re Worldwide Wholesale Lumber, Inc.)*, 372 B.R. 796, 809-10 (Bankr.D.S.C. 2007) ("The law of the case doctrine does not bar the litigation of the issues raised in the amended complaint since these issues were not properly before the court . . . and therefore were not determined by the court."). The court will thus deny the Sullivans' motion to dismiss as it pertains to Count III.

The Sullivans also seek to dismiss Count IV of the first amended complaint, which asks the court to equitably subordinate their claim to that of the Plaintiff. Because Count IV is essentially only a remedy sought by the Plaintiff based upon its allegations in Counts III, V, and VI of its first amended complaint, the court finds that no analysis is necessary to resolve this portion of the motion to dismiss. For purposes of disposing of the motion to dismiss, the court will dismiss Count IV insofar as it does not constitute a separate cause of action in the court's view. To the extent that one or more of Counts III, V, and VI survive the Sullivans' motion to dismiss, however, equitable subordination remains a viable remedy.

In Count V of its first amended complaint, the Plaintiff asserts that the Clerk of the County Commission of Jefferson County (the "Clerk"), who is not an active participant in this proceeding, was the Sullivans' agent at all times relevant here. Specifically, however, the Plaintiff contends in paragraph 68 of its first amended complaint that "[a]s a result of the negligence of the [Sullivans] and their agent, the Clerk, the Sullivans' Deed of Trust could not be reasonably found in the land records of Jefferson County, West Virginia, misleading Middleburg [(the Plaintiff's predecessor-in-interest)] into believing it would retain a first priority lien position . . . ." Notably, Count V seeks damages from the Sullivans' based upon their negligence and does not involve the relative lien priority of the Plaintiff and the Sullivans.[1]

The court will dismiss Count V of the Plaintiff's first amended complaint. As the court notes in footnote 1, it cannot impute the Clerk's alleged negligence to the Sullivans, at least at

---

[1] To the extent that Count V also contains allegations of negligence by the Clerk, the court ignores those allegations for purposes of disposing of the Sullivans' motion to dismiss because the court bifurcated the Plaintiff's claims against the Clerk from the claims against the Sullivans. Insofar as Count V contains an allegation that the Clerk acted as the Sullivans' agent, the court similarly ignores that allegation and looks at whether the Plaintiff has stated a plausible cause of action against the Sullivans based upon their alleged negligence alone.

5

this stage of the proceeding. In fact, the Plaintiff makes clear in its first amended complaint that it does not seek such a determination. Rather, the Plaintiff alleges in its first amended complaint that the Sullivans acted negligently, independent of the Clerk, by loaning the Debtor money and not ensuring the proper recordation and indexing of their deed of trust securing the repayment of the loan. The court finds such an assertion to be questionable, at best, if not specious. The Sullivans are correct that in West Virginia, a deed of trust provides constructive notice to the world regardless of whether the county clerk properly indexes it. *Bank of Marlinton v. McLaughlin*, 17 S.E.2d 213, 219 (W. Va. 1941).

Despite the Plaintiff's argument to the contrary—that "the outdated opinions from 80 to 100 years ago need to give way to current day reality"—it has not provided any authority in West Virginia, and the court is aware of none, to support its claim that a party recording an instrument in the county land records has a duty to the universe to ensure that the county clerk properly records the instrument. In fact, the Supreme Court of Appeals of West Virginia has interpreted the relevant West Virginia statutes to the contrary. *See Benson v. Wood Motor Parts Corp.*, 174 S.E. 895, 896 (W. Va. 1934) (citation omitted) ("The indexing of an instrument, unless expressly made so by the statute, is no part of the recordation . . . and however desirable it might be to require recording in proper books, and to prescribe appropriate indexing, those matters, we must hold, are for the Legislature . . . ."); *Fisher v. Reamer*, 118 S.E.2d 76, 81 (W. Va. 1961) (citation omitted) ("The 'filing' of an instrument with the clerk of the county court for purposes of recordation has . . . been held by this Court to be tantamount to the recordation thereof."). Moreover, the court finds that a recording party can rely on the county clerk's office, as public officials, to properly record and index an instrument when submitted. *See Bailey Lumber Co. v. Gen. Constr. Co.*, 133 S.E. 135, 139 (W. Va. 1926) (construing language regarding the recording of a mechanics' lien to mean simply that the "notice. . . be filed with the clerk whose duty it is to record it."). The court will thus dismiss Count V of the Plaintiff's first amended complaint.

Finally, in Count VI of the first amended complaint, the Plaintiff seeks damages from the Sullivans based upon their alleged tortious interference with the contract between it and the Debtor. The Sullivans assert that the court must dismiss Count VI because a claim for such tortious interference requires an intentional act of interference, which the Plaintiff has not sufficiently alleged to state a claim for tortious interference with contract. In support of its claim

6

in that regard, the Plaintiff relies upon *Hatfield v. Health Management Assocs. of W. Va.*, 672 S.E. 2d 395 (W. Va. 2008). The Plaintiff asserts, albeit in a footnote, that *Melbourne Bros. Constr. Co. v. Pioneer Co.*, 384 S.E. 2d 857 (W. Va. 1989) controls the outcome here.

Having considered both cases, the court finds *Hatfield* to be more instructive here. Specifically, *Hatfield* is the only case of the two that sets forth the elements of a claim for tortious interference of contract. In fact, the court in *Melbourne Bros*. had before it on appeal issues other than whether the plaintiff there made a prima facie showing that the defendant tortiously interfered with the contract in question. Regarding the motion to dismiss before the court here, the court finds that the Plaintiff has failed to state a claim against the Sullivans for tortious interference with contract because such an action requires "an intentional act of interference." *See Hatfield*, 672 S.E.2d at 398 Syl. Pt. 5.

To the extent that the Plaintiff contends that "an intentional act of interference" is different that an "act of intentional interference," the court is unpersuaded. As the court understands the Plaintiff's argument in that regard, all that a plaintiff must assert to plead a cause of action for tortious interference with contract is that the defendant took an intentional act that led to the interference complained of, even if the plaintiff did not intend the interference. The court rejects that argument based upon the inclusion of "of" in the phrase "intentional act of interference." By including "of," the *Hatfield* court makes clear that an act that leads to interference by coincidence is insufficient. Moreover, "[d]efendants are not liable for interference that is negligent rather than intentional . . . ." *Id.* Otherwise, the law would simply require "an intentional act that led to interference." The court will thus dismiss Count VI the Plaintiff fails to allege that the Defendants' payment to the Debtor constitutes an "intentional act of interference."

## IV. CONCLUSION

Based on the foregoing, the court will enter a separate order granting, in part, and denying, in part, the Sullivans' motion to dismiss. Count III survives the Sullivans' motion to dismiss, but the court will dismiss Counts IV, V, and VI.